UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

THE BANK OF NEW YORK MELLON,

Plaintiff(s),

v.

ELKHORN COMMUNITY ASSOCIATION, ET AL.,

Defendant(s).

Case No. 2:16-CV-2571 JCM (CWH)

ORDER

Presently before the court is plaintiff Bank of New York Mellon f/k/a The Bank of New York, as successor to JP Morgan Chase Bank, N.A., as Trustee for the Holders of the MLMI Surf Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-AB1's ("BNYM") motion for summary judgment. (ECF No. 43). Defendants Elkhorn Community Association ("the HOA") and 7321 Wandering Street Trust ("WST") filed responses (ECF Nos. 44, 46), to which plaintiff replied (ECF No. 48).

Also before the court is defendant WST's motion to dismiss.[1] (ECF No. 24). Plaintiff filed a response (ECF No. 30), to which defendant replied (ECF No. 31).

Also before the court is defendant HOA's motion for summary judgment. (ECF No. 42). Plaintiff filed a response (ECF No. 45), to which defendant replied (ECF No. 47).

. . .

. . .

. . .

---

[1] The HOA joined WST's motion to dismiss (ECF No. 27), and reply in support of its motion to dismiss (ECF No. 33).

## I. Facts

This case involves a dispute over real property located at 7321 Wandering Street, Las Vegas, Nevada, 89131 (the "property"). On September 18, 2002, April Stewart purchased the property. (ECF No. 43-1).

On December 6, 2004, Stewart transferred the property to herself and Jason McCormac (collectively, "the borrowers"). (ECF No. 43-2). The borrowers obtained a loan in the amount of $194,400 from non-party United Pacific Mortgage d/b/a Mandalay Mortgage ("UPM") to refinance ownership of the property. (ECF No. 43-3). The loan was secured by a deed of trust, dated December 6, 2004, and recorded on December 16, 2004. *Id.* The deed of trust listed Mortgage Electronics Registration Systems Inc. ("MERS") as nominee for the lender UPM. *Id.* The covenants, conditions, and restrictions ("CC&R's") governing the property contained a mortgage protection clause (section 6.16). (ECF No. 43-15).

On December 20, 2010, MERS assigned the deed of trust to BNYM via an assignment of deed of trust. (ECF No. 43-4). The borrowers subsequently defaulted on the terms of the note and senior deed of trust by not making a payment due on April 1, 2010, and failing to make any payments due thereafter. (ECF No. 43-5).

On March 2, 2011, non-party Angius & Terry Collections, LLC ("Angius"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $711.07. (ECF No. 43-6). On April 4, 2011, Angius recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,586.07. (ECF No. 43-7).

On December 21, 2011, Angius recorded a notice of trustee's sale, stating an amount due of $2,697.40 and an anticipated sale date of January 11, 2012. (ECF No. 43-8). On January 11, 2012, Angius, on behalf of the HOA, foreclosed on the property. (ECF No. 43-9). At the foreclosure sale, the auctioneer stated,

> You are hereby notified by the Association, the beneficiary, through its foreclosure agent, that the opening bid does not include the super-priority lien amount. That the super-priority lien amount will still be a lien on the property once the sale is completed. You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that said lien may affect the property, title to the

James C. Mahan
U.S. District Judge

- 2 -

property or value of the property. The purchaser buys this property with full knowledge and understanding of same.

(ECF Nos. 43-11 and 43-12).

WST had a representative who attended the sale, and admits to hearing a statement regarding the super-priority portion of the lien remaining on the property after the foreclosure:

> Q: Do you remember what [the auctioneer's] instructions were?
> A: It had something to do with the opening bid did not include the super priority amount, which seemed -- I was wondering why their opening bid amount was so low. In other words, it didn't seem like it included the full amount due in the Notice of Sale.
> . . .
> Q: Does [the auctioneer's notice I just read] sound like what you were talking about before, that she said something about the super priority lien still being in place and that confused you?
> A: Yes.

(ECF No. 43-14 at 7–9) (Deposition of Jacob Lefkowitz, 30(b)(6) representative for WST). Further, WST acknowledged the announcement in writing. (ECF No. 43-12, 43-13 and 43-14).

WST purchased the property at the foreclosure sale for $1,050. (ECF No. 43-9). A trustee's deed upon sale in favor of WST was recorded on January 13, 2012. *Id.* The trustee's deed upon sale states that the HOA conveyed "without warranty expressed or implied to [WST] that portion of its right, title and interest secured by the non-priority portion of its lien under NRS 116.3116." *Id.* Plaintiff alleges that at the time of foreclosure the property had a fair market value of $77,000. (ECF No. 43-10).

On July 6, 2015, plaintiff filed a complaint in this district against the HOA and WST. *See Bank of New York Mellon v. Elkhorn Community Association et al*, 2:15-cv-01272-APG-PAL ("*Elkhorn I*") (ECF No. 3). On July 22, 2015, the HOA filed a third party complaint against Angius. *Id.* at (ECF No. 7). On November 20, 2015, WST filed a motion to dismiss in that case. *Id.* at (ECF No. 19). Plaintiff failed to respond after the court granted two requests for extension of time. *Id.* at (ECF No. 31). The court granted WST's motion to dismiss, citing plaintiff's failure to respond as consent to the granting of the motion. *Id.* The order language reads "IT IS HEREBY ORDERED that the motion to dismiss (Dkt. #19) is GRANTED and this case is DISMISSED." *Id.*

On November 4, 2016, plaintiff filed the underlying complaint, alleging four causes of action: quiet title against all defendants; breach of NRS 116.1113 against the HOA; wrongful foreclosure against the HOA; and injunctive relief against WST.[2] (ECF No. 1).

In the instant motions, WST moves to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. (ECF No. 24). Plaintiff moves for summary judgment on its claim for quiet title.[3] (ECF No. 43). The HOA moves for summary judgment on all plaintiff's claims against the HOA. (ECF No. 42).

**II.  Legal Standard**

*a.  Failure to state a claim*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

---

[2] As defendants note, plaintiff's complaint in this case is essentially the same complaint that plaintiff filed in *Elkhorn I*.

[3] Plaintiff's motion does not discuss its claims for breach of NRS 116.1113 or wrongful foreclosure. *See* (ECF No. 43).

James C. Mahan
U.S. District Judge

- 4 -

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

    *b. Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would

bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.      Discussion**

As an initial matter, the court takes judicial notice of the following recorded documents: the first deed of trust (ECF No. 43-3); the assignment from MERS to plaintiff; (ECF No. 43-4); the notice of delinquent assessment (ECF No. 43-6); the notice of default and election to sell (ECF No. 43-7); the notice of trustee's sale (ECF No. 43-8); the trustee's deed upon sale (ECF No. 43-9); and the CC&R's governing the property (ECF No. 43-15). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

*a.   Whether issue or claim preclusion bar the instant lawsuit*

Defendant WST argues in its motion to dismiss that issue and/or claim preclusion bar plaintiff from bringing the instant lawsuit. (ECF No. 24). The court will address this argument before considering the underlying merits of the case.

"The doctrine of issue preclusion prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn,* 56 F.3d 1128, 1131 (9th Cir. 1995).

Claim preclusion applies where: "(1) there has been a valid, final judgment in a previous action; (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first action; and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit . . . ." *Hillcrest Investments, Ltd. v. American Borate Co.*, no. 2:15-cv-01613-RFB-GWF, 2016 WL 5796853, at *5 (D. Nev. Sept. 30, 2016).

In *Hagos v. Washington Mutual Bank*, 2:15-cv-01606-APG-VCF, 2016 WL 3638111 (D. Nev. July 6, 2016), another court in this district confronted a similar question to the one posed in this case. In *Hagos*, defendants argued that plaintiff's complaint should be dismissed for, amongst other reasons, claim and issue preclusion. Prior to filing the complaint in *Hagos*, plaintiff had

brought the same or related claims against defendants in two prior bankruptcy cases and two prior district court cases. *Id.* at \*2. One of the prior district court cases was dismissed for failure to oppose a motion to dismiss. *Id.* The court held that the prior dismissals were without prejudice, noting that,

> [Plaintiff] was never warned . . . that failure to follow any of the court's order, to timely respond, or to properly amend his complaint could lead to his case being dismissed with prejudice. Given these facts and circumstances, and that dismissal with prejudice is an extreme measure, I will not presume that [the prior judges'] orders intended that result. I therefore find that the dismissals of the prior cases were without prejudice.

*Id.* at \*3.

Here, Judge Gordon granted defendant's motion to dismiss in *Elkhorn I* based on plaintiff's failure to oppose defendant's motion to dismiss. 2:15-cv-01272-APG-PAL (ECF No. 31); *cf. Hagos*, 2016 WL 3638111, at \*2 ("[Defendant] successfully moved to dismiss the complaint [in the second district court case] because [plaintiff] failed to file an opposition."). The court never notified plaintiff that failure to respond would result in dismissal with prejudice. Further, the order does not discuss the merits of defendant's motion or state that dismissal would be with prejudice. Accordingly, the court holds that the dismissal in *Elkhorn I* was not a dismissal on the merits, *see Hagos*, 2016 WL 3638111, at \*3. Therefore, neither issue nor claim preclusion bar plaintiff from bringing the instant lawsuit. *See Shaw*, 56 F.3d at 1131; *Hillcrest*, 2016 WL 3638111, at \*5.

### b. *Plaintiff's motion for summary judgment*

Plaintiff raises the following grounds in support of its motion for summary judgment: the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); the HOA foreclosed on the sub-priority piece of its loan only; and the foreclosure sale was commercial unreasonable under *Shadow Wood*. (ECF No. 43).

The court will address plaintiff's argument that the sale was commercially unreasonable, as the court's holding on that issue necessitates quieting title in favor of plaintiff.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require

James C. Mahan
U.S. District Judge

- 8 -

any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[4] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest

---

[4] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[5]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Notably, the *Shadow Wood* court did not adopt the restatement's position on the 20% threshold test for grossly inadequate sales price. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco*

---

[5] *See, e.g., Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

*Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

BNYM cites *ZYZZX2 v. Dizon*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016) to support its position that the sale to WST was commercially unreasonable. (ECF No. 43 at 18). In *ZYZZX2*, the subject property was governed by CC&R's which contained a mortgage protection clause. *Id.* at 5. Prior to foreclosure, the HOA trustee sent out misleading mailings that suggested the foreclosure sale would not extinguish the first deed of trust on the property. *Id.* at *4. The property sold at a foreclosure sale for $15,000. *Id.* at *1. This court held that the mailings, in addition to the CC&R's mortgage protection clause and the "disproportionately low price" at foreclosure,[6] constituted unfairness that warranted setting aside the sale as commercially unreasonable. *Id.* at *4–5.

Here, the auctioneer at the foreclosure sale stated that the foreclosure sale was not on the superpriority portion of the HOA lien, and "[t]hat the super-priority lien amount will still be a lien on the property once the sale is completed." (ECF Nos. 43-11 and 43-12). WST's representative who attended the sale confirmed that he heard the auctioneer make a statement that the

---

[6] The property was valued at $210,863, *ZYZZX2*, 2016 WL 1181666, at *1, making a sale price of $15,000 approximately 7% of fair market value.

superpriority portion of the lien would continue to encumber the property after the foreclosure sale. (ECF No. 43-14 at 8). Further, the court again notes that the trustee's deed upon sale states on its first page that "Angius . . . [as] trustee for Elkhorn . . . does hereby grant and convey, but without warranty expressed or implied to [WST], that portion of its right, title and interest secured by the non-priority portion of its lien under NRS 116.3116 in and to [the property]." (ECF No. 43-9).

WST paid $1,050 at the foreclosure sale for an interest in property with a fair market value estimated at $77,000. (ECF No. 43). This price was less than half of the lien interest being foreclosed upon, and less than 2% of the fair market value of the property at the time of foreclosure. Further, the CC&R's contained a mortgage protection clause. (ECF No. 43-15). These facts are legally indistinguishable from the facts of *ZYZZX2*. *Cf.* 2016 WL 1181666 (misleading statements regarding the effect of foreclosure, coupled with a sale price of 7% of fair market value and CC&R's containing a mortgage protection clause warranted setting aside a sale as commercially unreasonable). Accordingly, the court will set aside the foreclosure sale as commercially unreasonable. *See id.* Therefore, plaintiff's first deed of trust was not extinguished by the foreclosure proceedings.

The court will grant plaintiff's motion for summary judgment on its claim for quiet title as to defendant WST and as to any sub-priority interest held by defendant HOA. However, as the court holds that the foreclosure sale was commercially unreasonable and exercises its equitable power to void the sale, plaintiff's interest is subordinate to any superpriority interest held by the HOA.

*c. Defendants' motion to dismiss and motion for summary judgment*

The court holds that the foreclosure sale was commercially unreasonable. Therefore, the court will deny defendant WST's motion to dismiss, which argues that plaintiff's complaint fails to state a claim upon which relief can be granted. To the extent that defendant HOA's motion for summary judgment requests judgment on plaintiff's claim for quiet title based on the theory that WST obtained an interest in the property at the foreclosure sale, the court will deny the motion.

Defendant HOA's motion for summary judgment requests judgment on plaintiff's claims for violation of NRS 116.1113 and wrongful foreclosure. (ECF No. 42).

Plaintiff's second and fourth causes of action are premised on the assumption that the HOA foreclosure sale extinguished plaintiff's interest in the property. *See* (ECF No. 1 at 11) ("If it is determined that [the HOA's] sale extinguished the senior deed of trust . . ."); (ECF No. 1 at 13) (". . . the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust."). The court has held that the foreclosure sale did not extinguish the senior deed of trust. Therefore, the court will grant summary judgment in favor of defendant HOA on plaintiff's claims for violation of NRS 116.1113 and wrongful foreclosure.

## IV. Conclusion

In light of the foregoing, plaintiff has shown that it is entitled to judgment as a matter of law. The court holds that the foreclosure sale was commercially unreasonable, and plaintiff's first deed of trust continues to encumber the property.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (ECF No. 43) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that WST's motion to dismiss (ECF No. 24) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 42) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff shall prepare a proposed judgment consistent with this order and submit it to the court within thirty (30) days of the filing of this order.

DATED February 1, 2018.



UNITED STATES DISTRICT JUDGE